*343
 
 OVERTON, Justice.
 

 This is a suit involving the right to a homestead exemption. Plaintiff brought the suit on a promissory note, made by defendant, for $300, subject to certain credits, unnecessary to state. Plaintiff’s petition sets forth that it held as collateral to this note a mortgage note for $1,000, dated January 31, 1927, secured by mortgage, of even date with the note, containing a homestead waiver, and annexed to its petition copies of the mortgage, the $300 note, and the mortgage note, held as collateral. Plaintiff prayed for the amount due it and for recognition of its mortgage rights on the property mortgaged. Judgment was rendered in that suit in favor of plaintiff accordingly.
 

 Several months thereafter, execution was issued from the judgment, and the property mortgaged to secure the collateral note, which constituted the homestead, was seized and advertised for sale. The day before the sale, defendant and his wife filed a third opposition, in which they asserted that the property seized was their homestead, and refraining from stopping the sale, prayed that they be paid $2,000, the limit of their homestead rights, out of the proceeds of the sale, as is permitted by sections 1 and 2 of article 11 of the Constitution of 1921. The sale was made by the sheriff the day following the assertion of the' homestead rights, and the property brought $500, which is being held by the sheriff pending the determination of the homestead claim.
 

 Plaintiff does not question that the land, mortgaged to secure the collateral note, is occupied as a home and was so occupied by defendant, Joe P. Hendricks, and his dependents at the time that the mortgage was grantj ed, but contends that the homestead exemption was waived by Hendricks and his wife in the act, granting the mortgage to secure the collateral note. On the other hand, Hendricks and his wife urge that, while this is true, nevertheless, the $1,000 note, prior to the time plaintiff acquired it as collateral, was used to secure a $300 note, made by Hendricks to the order of the Ouachita National Bank; that Hendricks paid the $300 note; that, when he did so, the collateral note reverted ' to him and became extinguished by confusion ; that, with its extinguishment, the homestead waiver, as an accessory to the note, fell and ceased to exist; and that, when Hendricks delivered the $1,000 note to plaintiff, as collateral, to secure the $300 note he had given plaintiff, no homestead waiver passed to plaintiff for it had become extinct by confusion.
 

 The mortgage, securing the note for $1,000, is one by notarial act. It recites that Hendricks, the mortgagor, is indebted to any future holder or owner of the note described in it in the sum of $1,000 for which he has executed his promissory note, payable to his own order and by him indorsed in blank, maturing on October 1, 1927, with 8 per cent, yearly interest thereon, payable semiannually.
 

 The mortgage also recites that Hendricks waives and renounces his homestead rights on the property mortgaged, and ’declares that his wife appeared, and that, after her homestead rights were explained to her by the notary, she declared that she waived them in favor of any bona fide holder or owner of the mortgage and note.
 

 
 *345
 
 The $1,000 note, upon its execution, was delivered to the Ouachita National Bank to secure any indebtedness then due it by Hendricks or that might become due it, in the future, including, as indebtedness then owing, a $300 note, which, after having been renewed, w.as paid. The $1,000 note, Hendricks says, after having been delivered to him, on payment of the $300 note, was left by him with the bank for safekeeping, though the evidence leaves the impression that it was left there to be used as collateral, and it was so used for Hendricks’ debts.
 

 It appears that after the bank was paid the $300 note, Hendricks executed in its favor a note for $200 for money borrowed. The $1,000 note was held by the bank as collateral to this note. About the time that the $200 note matured, defendant and his wife negotiated a $300 loan, borrowing the money from plaintiff, and executed, in plaintiff’s favor, a note for that amount, which was renewed twice. The second renewal note is the one sued upon here as the principal note. When arrangements were made by Hendricks for the loan from plaintiff, his wife, by the great weight of the evidence, was present and in position to hear what was said. It was then arranged that the $200 note due the Ouachita National Bank should be paid out of the loan, and that the $1,000 note should be given plaintiff as collateral -to the proposed $300 note. This arrangement was carried out by the parties.
 

 The question that the case presents for determination is whether or not the $1,000 note could be reissued, after having been used in another transaction with a third party, as collateral, and, if ,so, whether the reissuanee of the note carried with it the mortgage and homestead waiver.
 

 The record makes it clear that the original purpose of executing the $1,000 note was to use it as collateral. The mortgage, securing the note, indicates as much. It is given to secure no specific debt to some particular person, but to secure a debt, declared by the mortgagor to be due to himself, and was used, when granted, as collateral. The mortgage recites that it secures the note in the hands of any future holder of the note, and that the homestead waiver is in favor of such holder. The note, secured by it, was never used otherwise than as collateral.
 

 We are not here considering, as is apparent, a mortgage note made for a specific debt to a particular person or his order, as relates to the payment of such note and its reissuance to the prejudice of third persons, but a mortgage note issued and used for collateral purposes, which has not been paid, although a note, which it was first given to secure, has been paid.
 

 In the instance, which we are considering, that is, the latter instance, there should be no question that the note, secured by the mortgage, containing the homestead waiver, may be reissued and used as collateral, as effectively as it could be on the day it was first issued. In such a case there is no reviving of the mortgage for it has never been extinguished. This applies also to the homestead waiver, the waiver being a part of the mortgage and intended to increase the value of it as security. Herber v. Thompson, 47 La. Ann. 800, 17 So. 318; Levy v. Ford, 41 La. Ann. 873, 6 So. 671; Varnado v. Thompson & Co., 129 La. 15, 55 So. 693. In the case last cited,
 
 *347
 
 namely, the Vamado Case, the court held, quoting from the syllabus, that “a waiver of homestead rights embraced in an act of mortgage exists as long as the mortgage does.”
 

 The trial court rendered judgment, rejecting third opponents’ demand, thus disallowing the homestead claim.
 

 The judgment is affirmed.
 

 ST. PAUL, J., absent.